# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LOUISE CARDENAS,

    *Plaintiff*,

v.                                  CASE NO. 12-CV-13721

COMMISSIONER OF              DISTRICT JUDGE GERSHWIN A. DRAIN
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 15.)

Plaintiff Louise Cardenas was 46 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 31.) Plaintiff's employment history includes work as a babysitter for three months and as a cashier for four years. (Tr. at 137.) Plaintiff filed the instant claims on May 12, 2010, alleging that she became unable to work on July 31, 2005. (Tr. at 109-15, 116-19.)[2] The claims were denied at the initial administrative stages. (Tr. at 63, 64.) In denying Plaintiff's claims, the Commissioner considered diabetes mellitus, osteoarthritis and allied disorders as possible bases for disability. (*Id.*) On May 31, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Kathleen H. Eiler, who considered the application for benefits *de novo*. (Tr. at 10-26, 27-52.) In a decision dated June 30, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 21.) Plaintiff requested a review of this decision on July 28, 2011. (Tr. at 7-9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 21, 2012, when, after review of additional exhibits[3] (Tr. at 952-1282), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On August 22, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

B.   **Standard of Review**

---

[2]Plaintiff had previously filed an application on July 26, 2007. (Tr. at 101-08.)

[3]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

5

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2008, and that Plaintiff had not engaged in substantial gainful activity since July 31, 2005, the alleged onset date. (Tr. at 15.) At step two, the ALJ found that Plaintiff's diabetes mellitus, methicillin resistant staphylococcus aureus ("MRSA") outbreaks, diabetes retinopathy, and right shoulder disorder were "severe" within the meaning of the second sequential step. (Tr. at 16.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16-17.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 19-20.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 40 years old, which put her in the "younger individual age 18 - 44" category. *See* 20 C.F.R. Part 404, Subpart P, App. 2. At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 17-19.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 20-21.)

E.  **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was involved in a motor vehicle accident in November 2006. X-rays of Plaintiff's left wrist, shoulders, left ankle, right tibia and fibula, and pelvis were normal, but "[s]pondyloarthropatic changes at the lumbosacral junction" were noted. (Tr. at 380-83.) X-rays of Plaintiff's right knee showed a "small 5 mm well-corticated osseous density at the lateral margin of the patella [which] may represent unfused ossification center." (Tr. at 384.) Doppler ultrasound tests of Plaintiff's bilateral lower extremities were unremarkable. (Tr. at 386.) A renal ultrasound taken in October 2006 was also unremarkable. (Tr. at 387.)

Plaintiff was treated for a scalp and shoulder infection and abscess, diabetes mellitus, hypertension, hyperlipidemia, extremity pain, sleep apnea, and diabetic neuropathy at the Synergy Medical Education Alliance from 2005 to 2009. (Tr. at 212-313, 354-783.) Plaintiff failed to attend appointments in September 2006, November 2006, December 2005, December 2006, September 2008, October 2008, and December 2008. (Tr. at 212, 247, 248, 251, 288, 289, 293.)[4] Plaintiff was cited for noncompliance with her medications and appointments and warned of the potential consequences in January 2005, April 2006, May 2006, August 2006, January 2007, December 2007, January 2008, February 2008, and June 2008. (Tr. at 242, 257-58, 262, 267, 275, 281, 303, 646-47.)

Plaintiff sought treatment in the emergency room in February 2010 for chest pain. (Tr. at 314-41.) After conducting stress tests, an EKG, a myocardial perfusion scan, chest x-rays, blood and enzyme tests, "[a]cute coronary syndrome [was] ruled out." (Tr. at 329.)

Plaintiff participated in physical therapy for left shoulder pain from March to May of 2010. (Tr. at 342-53.) X-rays of Plaintiff's right shoulder taken in March 2010 showed "changes consistent with some pre-existing shoulder impingement in a patient with known rotator cuff tear." (Tr. at 519.)

Plaintiff underwent a cataract extraction in her left eye in March 2010. (Tr. at 732-33, 906-07.) In June 2010, gray scale images of Plaintiff's right rotator cuff showed a "partial-thickness intrasubstance tear involving at least 50% thickness of the anterior half of the suprasinatus tendon. No full thickness tear is seen." (Tr. at 515.) A renal ultrasound taken in June 2010 was unremarkable. (Tr. at 517-18.)

---

[4]These citations do not include the instances where Plaintiff called and cancelled appointments.

8

Plaintiff was treated for shoulder and elbow pain by Byron Chamberlain, M.D., in June 2010. (Tr. at 913-25.) Dr. Chamberlain noted that "[f]orward flexion is limited to about 150 degrees with significant discomfort[,] . . . [m]otor strength is 5/-5, contralateral shoulder. Full range of motion. No instability. There is no instability to the elbow or the shoulder." (Tr. at 916.)

On July 10, 2010, Bala Grandhi, M.D., recommended physical therapy for Plaintiff's shoulder since "[x]-rays done elsewhere do not show any significant abnormality." (Tr. at 917.)

A Disability Determination Explanation Case Information analysis was completed by Natalie Gray, M.D., on July 15, 2010. (Tr. at 784-801.) Dr. Gray concluded that Plaintiff's statements about the intensity, persistence and functionally limiting effects of her symptoms were not substantiated by the medical evidence, that Plaintiff's activities of daily living were the most informative in assessing Plaintiff's credibility, and that Plaintiff was only partially credible. (Tr. at 789.) Dr. Gray found that Plaintiff could occasionally lift ten pounds, frequently lift less than ten pounds, stand or walk for two hours, sit for about six hours in an eight-hour workday, and was limited in her ability to push or pull with her right upper extremities. (Tr. at 789-90, 797-98.) Dr. Gray also indicated that Plaintiff could occasionally climb stair and ramps, balance, kneel, crouch, and crawl but should never climb ladders/ropes/scaffolds. (Tr. at 790, 798.) Dr. Gray also found that Plaintiff was limited in right front, lateral and overhead reaching and handling and fingering, but was unlimited in feeling. (*Id.*) Dr. Gray therefore found that Plaintiff retained the capacity to perform sedentary work. (Tr. at 791, 799.)

Plaintiff sought treatment in the emergency room for "[a]ll over fatigue" on September 24, 2010. (Tr. at 802-21.) On December 16, 2010, Plaintiff underwent an operation for diabetic retinopathy, i.e., a pars plana vitrectomy, endolaser panretinal photocoagulation. (Tr. at 825, 897-

99.) On December 30, 2010, it was noted that Plaintiff's eye was "doing well." (Tr. at 900.) Plaintiff's visual acuity was 20/50 in her right eye and 20/200 in her left eye. (*Id.*)

Plaintiff indicated in her Daily Activity Report that she has some pain but is able to manage her own personal care, cooks complete meals on a daily basis for two to three hours, does laundry, light dusting, sweeping, picks things up, waters outdoor flowers, does yard work (with the help of her daughter if Plaintiff is experiencing pain), goes outside on a daily basis, drives and rides in a car, shops in stores for two hours at a time (however on bad days her daughter does the shopping for her), handles her own personal finances, enjoys cooking, flowers, movies and spending time with her grandson on a daily or weekly basis, and enjoys going to church, stores, and school with her children. (Tr. at 145-48.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> can perform work that [sic] the sedentary exertional level, however, she can only frequently push/pull with her right upper extremity as opposed to constantly.
>
> She can never reach overhead with her right upper extremity. She can reach to shoulder level frequently with the right upper extremity, and she can frequently, again as opposed to constantly handle and finger with her bilateral upper extremities.
>
> She can never climb ladders, rope, or scaffolds, but she can occasionally climb ramps or stairs, occasionally balance stoop, kneel crouch, or crawl. She cannot perform a job requiring fine visual acuity.

(Tr. at 49.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 750 jobs as a surveillance system monitor, the 2,500 inspector/checker jobs, and the 2,000 office setting jobs sorting mail and small packages or checking one computer sheet against another that are available in the State of Michigan. (Tr. at 50.) In response to the ALJ's question, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 48.)

10

**F.      Analysis and Conclusions**

**1.      Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 17-19.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.      Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800

F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ did not adequately articulate nor does substantial evidence support the ALJ's credibility findings. (Doc. 11 at 14-17.) In addition, Plaintiff argues that the ALJ's hypothetical was inaccurate, did not include limitations associated with MRSA or Plaintiff's eye surgeries and resulting lack of fine visual acuity, and did not reflect Plaintiff's actual RFC and, thus, that substantial evidence does not support the ALJ's RFC findings. (Doc. 11 at 17-21; Doc. 16 at 3-4.)

    a.    **Credibility Analysis**

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)    [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)    Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 17-19.) I suggest that the ALJ's finding – that the impairments were not of such severity that they could be reasonably expected to give rise to disabling pain or other symptoms – is supported by substantial evidence. (Tr. at 19.)

The only other person to have assessed Plaintiff's credibility also concluded that Plaintiff was only partially credible. Dr. Gray concluded that Plaintiff's statements about the intensity, persistence and functionally limiting effects of her symptoms were not substantiated by the medical evidence, that Plaintiff's activities of daily living were the most informative in assessing Plaintiff's credibility, and that Plaintiff was only partially credible. (Tr. at 789.)

As the ALJ found, Plaintiff has several severe impairments, i.e., diabetes mellitus, methicillin resistant staphylococcus aureus (MRSA) outbreaks, diabetes retinopathy, and right shoulder disorder. (Tr. at 16.) However, none of these impairments, alone or in combination, could reasonably be expected to produce disabling pain. Plaintiff has undergone successful surgeries for her retinopathy, but still has some lingering effects which the ALJ took into account in fashioning his hypothetical to eliminate jobs that require fine visual acuity. (Tr. at 49; Tr. at 825, 897-99.)

As to Plaintiff's shoulder, in November 2006, x-rays of Plaintiff's shoulders were normal. (Tr. at 381.) X-rays of Plaintiff's right shoulder taken in March 2010 showed only "changes

14

consistent with some pre-existing shoulder impingement in a patient with known rotator cuff tear." (Tr. at 519.) Similarly, in June 2010, gray scale images of Plaintiff's right rotator cuff showed a "partial-thickness intrasubstance tear," but "[n]o full thickness tear [was] seen." (Tr. at 515.) In June 2010, Dr. Chamberlain noted that although "[f]orward flexion is limited to about 150 degrees[,]" "[m]otor strength is 5/-5," there was a "[f]ull range of motion," and there was "no instability to the elbow or the shoulder." (Tr. at 916.) Finally, on July 10, 2010, Bala Grandhi, M.D., recommended physical therapy for Plaintiff's shoulder since "[x]-rays done elsewhere do not show any significant abnormality." (Tr. at 917.) Regardless, the ALJ also took into account Plaintiff's shoulder issues when she eliminated jobs that require constant pushing and pulling with her right upper extremity and when she indicated that Plaintiff can never reach overhead with her right upper extremity but could reach to shoulder level frequently. (Tr. at 49.)

The ALJ also properly noted that Plaintiff had been non-compliant with medications and appointments and considered such non-compliance as a factor in assessing Plaintiff's credibility. (Tr. at 18, 212, 242, 247-48, 251, 257-58, 267, 275, 281, 288-89, 293, 303, 646-47.) *See* 20 C.F.R. §§ 404.1530(a), 416.930(a).[5]

I therefore suggest that the ALJ's finding that Plaintiff was not fully credible is supported by substantial evidence and should not be disturbed.

**b.    RFC Analysis**

I suggest that the ALJ's RFC analysis is also supported by substantial evidence for the same reasons as discussed with respect to the credibility analysis. In addition, I note that the ALJ incorporated the only opinion evidence as to residual functional capacity which was provided by

---

[5] I note that the ALJ did not find that, had Plaintiff fully complied with treatment, the treatment may have restored her ability to engage in substantial gainful activity. If she had so found, SSR 82-59 would have required notice to the plaintiff and an opportunity to show justifiable cause for noncompliance. *See Kinter v. Colvin*, No. 5:12CV490, 2013 WL 1878883, at *9 (N.D. Ohio Apr. 18, 2013).

Dr. Gray who opined that Plaintiff retained the capacity to perform sedentary work. (Tr. at 791, 799.)

In addition, although Plaintiff argues that the ALJ's RFC analysis did not take into account Plaintiff's visual impairment, the ALJ expressly limited the hypothetical to exclude jobs that require fine visual acuity. (Tr. at 49; Tr. at 825, 897-99.)

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that, despite the pain, she feels she is able to manage her own personal care, cooks complete meals on a daily basis for two to three hours, does laundry, does cleaning such as light dusting, sweeping, and picking things up, waters outdoor flowers, does yard work (with her daughter's help), goes outside on a daily basis, drives and rides in a car, shops in stores for two hours at a time (except on bad days when her daughter does the shopping for her), handles her own personal finances, enjoys cooking, goes to movies, spends time with her grandson on a daily or weekly basis, and enjoys going to church, stores, and school with her children. (Tr. at 145-48.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                        s/ Charles E. Binder
                                                        CHARLES E. BINDER
Dated: July 25, 2013                               United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: July 25, 2013                          By     s/Patricia T. Morris
                                                          Law Clerk to Magistrate Judge Binder